AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (614) 504-9385, THAT IS STORED AT PREMISES CONTROLLED BY SPRINT

Case No. 2:20-mj-743

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ District of Kansas, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1201(c),(d) | Conspiracy to Commit Kidnapping and Attempted Kidnapping |

The application is based on these facts:
See attached affidavit, incorporated herein.

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jeremy Copeland, Task Force Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/30/2020

City and state: Columbus, Ohio

*Judge's signature*

Elizabeth Preston Deavers, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (614) 504-9385, THAT IS STORED AT PREMISES CONTROLLED BY SPRINT. | Case No. 2:20.mj.743<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jeremy Copeland, hereinafter referred to as Affiant, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain cellular telephones assigned call number (614) 504-9385, herein after referred to as SUBJECT PHONE 1, belonging to Jerry MCCALLISTER, and that is stored at premises controlled by Sprint, a cellular service provider headquartered in Overland Park, Kansas. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Sprint to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. Affiant has been a law enforcement agent of the Department of Homeland Security, United States Customs and Border Protection, United States Border Patrol since June of 2008. Affiant has over 12 years of total law enforcement training and experience to include, but not

1

limited to, the detection and apprehension of undocumented foreign nationals, the detection and investigation of the sale/use of fraudulent documents and the apprehension of fraudulent document users (imposters), and the detection and arrest of narcotics and human smugglers/traffickers and other criminal individuals. Affiant has been trained in the laws of search and seizure at the United States Border Patrol Academy in Artesia, New Mexico and has received subsequent training in the utilization, preparation, and execution of search and seizure warrants as a member of a Sector Intelligence Unit.

3. Affiant has over five years specialized experience as a member of a Sector Intelligence Unit, for the purposes of conducting intelligence driven operations, collection, and investigations. Affiant has interviewed, witnessed the interview of, and participated in the debriefing of numerous illegal aliens and criminals. Through this experience Affiant has gained in depth knowledge concerning the trade of fraudulent documents and smuggling techniques. Affiant has investigated both criminal and administrative violations of law pertaining to immigration, identity theft, and other federal crimes.

4. Affiant is currently assigned to the Department of Homeland Security - Homeland Security Investigations Office, Columbus, as a Task Force Agent. As such, Affiant has been directly involved in and supported all aspects of criminal investigation to include interviewing subjects, gathering facts, correlating information, and building criminal cases for prosecution in the Southern District of Ohio.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1201(c) and (d), Conspiracy to Commit Kidnapping and Attempted Kidnapping, have been committed by Antonio GREEN, Denia AVILA, Jessica WISE, Ellis LaTrent RAY, II, Michael Keith OUSLEY, Jerry MCCALLISTER, Antwuan GREEN, JR., and others. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

7. On November 25, 2019, at approximately 5:26 a.m., in the area of the 4400 block of English Lavender Place an attempted kidnapping of two individuals occurred. VICTIM 1 and VICTIM 2 (VICTIM 1's girlfriend) had just entered VICTIM 1's vehicle. As VICTIM 1 fastened his seat belt with the driver's door still ajar, two males wearing all black with black face masks approached from the rear of the vehicle. One of the men then used a Taser on VICTIM 1's neck and attempted to remove him from his vehicle. VICTIM 2 observed the incident from the passenger seat and began to scream, which caused the male to pause use of the Taser. At that point, VICTIM 1 was able to push the attacker back, and the two males fled on foot. VICTIM 1 stated he believed the suspects were trying to kidnap him and VICTIM 2, and steal the truck.

8. On December 4, 2019, at approximately 5:27 a.m., Hilliard Police Officers were dispatched to the 4400 block of English Lavender Place for a second attempted kidnapping of VICTIM 1 and VICTIM 2. The caller, later identified as VICTIM 1, stated his girlfriend, VICTIM 2, got into his Chevy Silverado truck to go to work. VICTIM 1 left in a different vehicle. Before VICTIM 2 could pull the truck out of the parking spot to go to work, she was blocked in by a black Mercedes Benz in her parking spot. VICTIM 2 stated two males then confronted her wearing black jackets that said "Police" in the form of a patch on the jackets. The men had a photograph of

VICTIM 1 and were yelling at VICTIM 2, "Police, open the door." The males were pulling on the car door handle in an attempt to open the car door. VICTIM 1 noticed the altercation after VICTIM 2 began honking the vehicle horn. VICTIM 2 was blocked in by the Mercedes, and fearing for her safety, she drove her vehicle over the curb, across a patch of grass, and fled the area. The men followed her to the area of Anson Dr. and Leap Rd. VICTIM 2 turned down Anson Dr. and the suspects continued on Leap Rd. VICTIM 2 stated she did not believe they were police because she saw no badges, guns/duty belts. The males were also wearing tennis shoes and driving a Mercedes Benz.

9. On December 4, 2019, Officers spoke with VICTIM 1 and VICTIM 2. VICTIM 2 advised that she was scared for her life as this was the second time people had tried to kidnap her. VICTIM 2 believed VICTIM 1's ex-girlfriend was responsible for the incidents. VICTIM 1 admitted his ex-girlfriend, AVILA, had planned to kidnap them, and he had two videos, dated November 22, 2019, showing AVILA discussing it. The videos were provided to officers. Police watched the videos, which showed AVILA and an unknown female, later identified as Jessica WISE, discussing that AVILA was upset with VICTIM 1. AVILA stated in the video; "We're doing this. I laid in the hospital for four days. He didn't answer the phone. She wouldn't let him. He owes me. He's coming here…" "I had it ready to do it today, her pictures right here, I was going to tell him this is why you are here mother fucker, she's the reason…"

10. As the women continued to discuss their plans, a Taser is heard being sparked in the background. They discuss the effectiveness of a Taser on VICTIM 1, to include using someone taller to Taser him, and AVILA talks about what type of clothing VICTIM 1 wears to work. The women also discussed using Mace and how VICTIM 1 won't be able to see anything. At one point the camera flips around and you can see AVILA and WISE. AVILA is also seen holding a pair of

leg shackles in the video and states we need to get a gun. They talked about how to keep him (VICTIM 1) in the hotel room, discussed whether the door can be locked from the outside, and mentioned tying him to the bed with rope.

11. WISE asked AVILA "you don't think he'll willingly stay?" AVILA responded "not if I do that, here's the thing..." WISE interrupted and stated "he's afraid you're gonna kill him?" AVILA answered "he's afraid because of the kids, because of the kids...everyone knows, you don't fuck with my kids...Now he knows all bets are off, you're dead, she's dead, everybody's dead." AVILA continued to cycle the leg shackles in her hands, clicking them open and closed several times during this portion of the conversation.

12. AVILA advised she could buy ski masks for $1.99 at Walmart and she had already bought black gloves. The two women also planned what to do with VICTIM 1's vehicle, and where they could put it without it being seen by the cameras. AVILA further stated VICTIM 1 and VICTIM 2 would not call the police because VICTIM 1 would just be deported to Mexico. AVILA talked about being loyal to VICTIM 1, and discussed paying $7,000 to bring him back illegally after he was previously deported from the United States. At one point in the video, WISE mentions she knows a guy named "Michael" that would do this.

13. VICTIM 1 confirmed that AVILA joined him in Mexico after he was deported in December of 2014. In January of 2015, VICTIM 1 stated that AVILA arranged for VICTIM 1 to be smuggled into the United States at the border, at which point AVILA met him, paid the smuggler and the two (AVILA and VICTIM 1) drove back to Ohio together. AVILA, therefore, knew that VICTIM 1 was in the United States illegally.

14. On the second video, AVILA is seen and heard talking on the phone with a female determined to be WISE. AVILA stated VICTIM 1 was definitely getting "scooped" up, and talked

about doing it on a Monday. The first kidnapping incident happened on Monday, November 25, 2019 in Hilliard, where VICTIM 1 was Tasered. AVILA also stated VICTIM 2 went too far when she talked to her (AVILA's) kids. AVILA stated that VICTIM 2 can only speak Spanish and has to be dealt with. AVILA said "you gotta figure out what I can do, like what would be ideal."

15. AVILA discussed with WISE how to follow VICTIM 2 and injure her, beat her up, kidnap her. They also discussed doing this in an area without cameras, and possibly putting a GPS tracker on VICTIM 2's car.

16. AVILA then discussed having VICTIM 2 taken to a remote location where she can have someone beat her up, drop her off, take her phone and other possessions, and leave her there. AVILA said "follow her (VICTIM 2), bop her, drop her off like really far, like where could we leave her…in the middle of nowhere, like I didn't even have cell phone service out there, but my best friends brother owns a…out there."

17. AVILA discussed how she could be involved if she wore a mask, and how she could leave her phone in Atlanta to create an alibi. AVILA also mentioned how she could send her phone to a friend in Boston so her friend could make calls and take pictures acting like AVILA is not in Ohio.

18. An arrest warrant was issued by Franklin County Municipal Court for AVILA on December 4, 2019 for Conspiracy to Commit Abduction.

19. On December 5, 2019, AVILA was arrested at her place of employment located at 5235 Westpoint Dr. Groveport, Ohio 43135. Officers obtained consent to search AVILA's office and several Apple iPhones were seized as evidence. AVILA later admitted to owning the white Apple iPhone, but did not provide the passcode to the device. The second Apple iPhone, inside a

grey case, was identified as AVILA's work phone which is owned by her employer, Inergroup. Officers were given consent to search AVILA's office and a key card was located in her jacket. Officers also located a dark grey Mercedes Benz sedan, which AVILA had driven to work. The Mercedes Benz matched the description of the vehicle used in the attempted kidnapping on December 4, 2019. Additional search warrants were obtained for the Mercedes Benz and contents of AVILA's purse. Inside the purse, officers located multiple IDs with AVILA's picture and various different names.

20. During the initial meeting with the VICTIMs, VICTIM 1 stated that AVILA's mother warned him about her behavior and that AVILA had been staying at different hotels on the east side of Columbus. Using law enforcement databases, officers were able find that AVILA had stayed at 4105 Hamilton Square Blvd, Groveport, OH 43125, and room 108 of the WoodSpring Suites - Columbus Southeast on November 28, 2019. Officers spoke with employees at the hotel and verified that AVILA had paid for the room until December 5, 2019. Officers spoke with staff at this hotel, who verified that she has been seen coming and going from room 108.

21. A search warrant was obtained for the hotel room on December 5, 2019. When officers executed the warrant, they located shirts with "police" on them, U.S. Immigration patches, handcuffs, black ski masks, black gloves, as well as an airsoft gun and holster. There was also a MacBook Air laptop in the hotel room next to the television. The computer screen bears the name "Denia AVILA" when opened. Officers located documents, all in AVILA's name, such as an Ohio State ID, tax paperwork and birth certificates. Additionally, officers located photographs of both VICTIMS.

22. A search warrant was obtained for AVILA's AT&T work cell phone on December 9, 2019. There were several conversations through text messages with "Mike 2" 614-439-9302

and "Mike" 614-284-0650. Through investigation it was discovered that "Mike 2" and "Mike" are Michael OUSLEY who also was employed at Pier 1 Imports, with the assistance of AVILA. AVILA also did a search for "Michael OUSLEY" in her google searches. It was discovered that both of these cell phones belong to OUSLEY.

23. On December 10, 2019, officers went to the Pier 1 distribution center located at 5235 Westpointe Dr. Groveport, Ohio to speak with OUSLEY. OUSLEY told them that his friend, Jessica WISE, told him that she had a friend, AVILA, who could get him a job at the Pier 1 warehouse.

24. OUSLEY also admitted to trying on police shirts and looking out for VICTIM 1's truck when he was at work. He further admitted to knowing AVILA. OUSLEY stated his "Mike 2" cell phone was located in AVILA's Porsche Cayenne, which he admitted to driving around and doing surveillance with her to watch VICTIM 1. He provided his cell phone, with number 614-284-0650, to officers. OUSLEY agreed to speak with officers on December 11, 2019. "Mike 2" had text messages from AVILA to have OUSLEY do surveillance on VICTIM 1 at his employer, which is in close proximity to Pier 1 Imports warehouse. Other texts from AVILA to "Mike2" requested that OUSLEY check "his" work because he is driving an unknown vehicle. When they returned from the interview, Officers confirmed that the female in the Nest video was WISE.

25. On December 11, 2019, OUSLEY came to the Hilliard Police Department and consented to the download of his cell phone with number 614-284-0650. OUSLEY's download also showed his contact number for WISE as 614-749-5439.

26. OUSLEY's phone records show one communication between himself and WISE on November 24, 2019 stating "you still down for the a.m.? Denia wants your number. She is paying for your help BTW. Ok, can I give her your number?" OUSLEY responds with an image

of a thumbs up. OUSLEY cell phone location data does place him in the area of the first kidnapping attempt on November 25, 2019, which was the next day and the VICTIMS residence, around 7:30 a.m., which was after the attempt was completed.

27. Officers drove OUSLEY around Hilliard and he specifically pointed out a warehouse across from the kidnapping site where he told officers he had sat and conducted surveillance on VICTIM 1 and VICTIM 2. OUSLEY maintained that he only "entertained" the idea of the kidnapping for AVILA, but he did not actively participate in the kidnapping.

28. Cell phone location data corroborates OUSLEY's statements that he conducted surveillance on the VICTIMS. For example, between November 1, 2019 and November 24, 2019, the cell phone associated with "Mike" was not in the area of the VICTIMS' residence. However, there is location data for that same device near the VICTIMS' residence on November 25-27, 2019, November 30, 2019 and December 2-4, 2019.

29. Additionally, cell phone interaction between AVILA and OUSLEY appears to have begun on November 25, 2019 and ended December 5, 2019.

30. When officers returned to the Police Department, they went through cell phone records obtained from AT&T. On November 22, 2019 at 9:41 p.m., a ninety minute phone call between 614-735-6560, which is AVILA's personal cell phone, is connected with 614-749-5439. This phone number belongs to WISE. The time of the phone call from AT&T records matches the second Nest video time.

31. Phone call logs for "Mike2" (OUSLEY) show phone calls with AVILA's phone before and after the kidnapping attempt on December 4, 2019. The 614-284-0650 cell phone is the phone that OUSLEY admits to having with him at all times. He also stated he had this phone with

him when he and AVILA went to the Surplus store to purchase police items believed to have been used in the attempted kidnappings.

32. In fact, officers located a receipt to Surplus World Inc. in Columbus, Ohio dated November 29, 2019, several days after the first kidnapping attempt, during the search of AVILA's hotel room. The receipt documented the purchase of two utility belts, a set of two "Police," which are believed to be patches, as well as two U.S. Immigration patches. Surveillance video from Surplus World, Inc. also confirmed that AVILA was present on November 29, 2019 for these purchases. OUSLEY also stated that AVILA bought some "police stuff" and "ICE stuff" from the Surplus store that AVILA made him try on, including a shirt and ICE hat.

33. Information from OUSLEY's cell phone show calls and text messages between he and AVILA. OUSLEY is also on video surveillance on November 30, 2019 at the hotel room where the search warrant was executed and the kidnapping related items were located.

34. WISE was arrested on December 13, 2019 locally for involvement in the planning of the kidnapping with AVILA. WISE consented to have her cell phone downloaded while she was interviewed by police. Subsequently, WISE's cell phone, AVILA's cell phone and OUSLEY's cell phone were sent to the Ohio State Highway Patrol Fusion Center. The Fusion Center analyst went through each individual phone extraction and correlated contact lists and messages from each device related to the time of the crimes committed. The Fusion Center analyst identified one phone number, 614-504-9385, that had 27 interactions on December 4, 2019 between 4:44am and 9:23am, which covered the second kidnapping attempt timeframe, and 96 interactions between December 2, 2019 and December 5, 2019 with OUSLEY. Of significance, there were no interactions between OUSLEY and this number between November 1, 2019 and

December 1, 2019. The Fusion Center then used law enforcement databases to identify a new potential suspect linked to this phone number (614-504-9385), which was Jerry MCCALLISTER.

35. Information extracted from OUSLEY's cell phone by Hilliard Police Department also corroborated communications with MCCALLISTER on December 4, 2019 via text message from 4:05 a.m. until 4:26 a.m. Records also show a text message conversation from 4:05 a.m. between OUSLEY and MCCALLISTER where OUSLEY says, "You up." MCCALLISTER responds, "U kno I am." OUSLEY says "Got 36 new caskeys and black hat" "Cackeys." This corresponds to the time prior to the kidnapping where the victims reported the subjects were dressed in "police" attire. Records also show a text message conversation from 7:21 a.m. until 7:48 a.m. where OUSLEY said to MCCALLISTER "you good dawg, man this chick got me stressed calling about some damn cheap ass taser man look when I took that vest off I threw it in right but I think I sat that shit on top of car before I got my big ass in back in cause aint no other explanation. Really don't know unless I dropped that shit again. Man that was fucked up this morning I'm still salty. Make sure you use your head nigga and be safe we don't need no probs. Damn mofo you aint answering."

36. Although VICTIM 2 did not recognize a photograph of either OUSELY or MCCALLISTER, she did recognize the police patch on a black jacket found in AVILA's hotel room. She did not recall seeing the U.S. Immigration patch.

37. A review of AVILA's work phone also revealed a screenshot of how ICE (Immigration and Customs Enforcement) makes arrests. Tagged internet searches on her work phone also included "The Hilliard Police," "army surplus stores," "ice costume," "ICE Federal Agent Halloween Costume," "ice coat," "ice costume," "Immigration costume," "immigration officer uniform," "immigration officer jacket," "ice immigration," "cousins army navy and surplus

store," "army surplus store," "police lights for sale," as well as searches for emergency lights, plate carries, and bulletproof vests.

38. The Fusion Center also showed cell phone 614-288-9970, belonging to Ellis Latrent RAY II, in the area of 4422 English Lavender between the hours of 5:18 a.m. and 5:20 a.m. on November 25, 2019, during the time of the first kidnapping attempt. RAY II, who lives in Canal Winchester and is believed to work in Etna, does not appear to have a reason to be in the area of the VICTIMS' residence at that time of morning. In WISE's cell phone download this number is listed as "My Son." Additional text messages in WISE's phone indicated that RAY II is directly related to WISE.

39. AVILA's work cell phone records also show a conversation with "Fatboy," who used phone number 614-228-9970 (RAY II). "Fatboy" said "idk he the one that fucked it up too." AVILA responded "RIGHT!!" This conversation took place on December 1, 2019 at 7:51 a.m., one week after the initial kidnapping attempt. Further review of call activity between RAY II and AVILA showed approximately 17 interactions between November 24, 2019 – just one day before the first kidnapping attempt – and December 3, 2019 – one day before the second kidnapping attempt. Prior to November 24, 2019 and after December 3, 2019, there are no interactions.

40. On July 16, 2020, federal agents arrested AVILA, WISE, RAY II, OUSLEY and MCCALLISTER on Conspiracy to Commit Kidnapping Charges.

41. During an interview with suspected co-conspirator Antwuan GREEN, JR., two new suspected co-conspirators were identified by the names of Javon (no last name given) and Antonio GREEN. Javon and GREEN were identified as staying at AVILA's Air B&B the night of November 24, 2019 and being involved in the November 25, 2019 kidnapping attempt.

42. Antonio GREEN is the brother of GREEN, JR. GREEN admitted to having his cellular telephone with him at AVILA's Air B&B, but could not recall if he had the cellular telephone with him during the attempted kidnapping.

43. The evidence, including the cell phone activity, video recordings, and interviews, indicates that at least AVILA, WISE, RAY II, OUSLEY and MCCALLISTER conspired to kidnap at least VICTIM 1.

44. The evidence further indicates that AVILA, RAY II and at least GREEN and GREEN, JR. were responsible for attempting to kidnap at least VICTIM 1, and tasing VICTIM 1 on November 25, 2019 as part of the conspiracy to kidnap at least VICTIM 1.

45. The evidence further indicates that AVILA, OUSLEY and MCCALLISTER were responsible for attempting to kidnap at least VICTIM 1 on December 5, 2019 as part of the conspiracy to kidnap at least VICTIM 1.

46. The investigation also revealed that historical cell site data can potentially provide evidence of a suspect's location at the time of the events in question – as it has appeared to do for AVILA, RAY and OUSLEY. This warrant seeks to obtain the historical cell site data location information for MCCALLISTER as an identified co-conspirator in the kidnapping attempts.

47. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the

telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

48. Based on my training and experience, I know that Sprint can collect cell-site data about phone number SUBJECT PHONE 1. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

49. Based on my training and experience, I know that wireless providers such as Sprint typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Sprint typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify SUBJECT PHONE 1's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

50. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

51. I further request that the Court direct Sprint to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Sprint, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

52. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

_____
Jeremy Copeland
Task Force Agent
Homeland Security Investigations

Subscribed and sworn to before me on the 30th day of October, 2020

_____
ELIZABETH A. PRESTON DEAVERS
United States Chief Magistrate Judge